# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MICHELLE DENISE HENDERSON, | ) |
| Plaintiff, | ) |
| vs. | ) Case No.: 4:16-CV-00763-FJG |
| UNITED AUTO WORKERS LOCAL 249 UNION and FORD MOTOR COMPANY, | ) |
| Defendants. | ) |

# ORDER

Currently pending before the Court is defendant Ford Motor Company ("Ford's") Motion to Dismiss (Doc. # 7),United Auto Workers Local 249 Union ("UAW's") Motion to Dismiss (Doc. # 20) and plaintiff's Motion for Leave to File An Amended Complaint (Doc. 28), UAW's Motion for Extension of Time to Respond to Plaintiff's Motion for Leave to File An Amended Complaint (Doc. # 33), Plaintiff's Motion for Discovery (Doc. # 35) and Defendants' Motion for Extension of Time to File Dispositive Motions (Doc. # 38).

## I. BACKGROUND

Plaintiff's initial Complaint was filed on July 18, 2016. In her initial Complaint, plaintiff alleged claims against the defendants for violations of Title VII, Age Discrimination in Employment Act, Americans with Disabilities Act and the Missouri Human Rights Act. Ford filed a Motion to Dismiss on November 15, 2016. On December 7, 2016, plaintiff was directed to show cause on or before December 30, 2016 why the Motion to Dismiss should not be granted. Plaintiff filed a one sentence

response on December 30, 2016 just stating that she requested that the Court not grant the defendants' Motions to Dismiss and that she wished to continue to trial. On January 26, 2017, defendant UAW filed a Motion to Dismiss. On February 27, 2017, the court directed plaintiff to file a substantive response to the Motions to Dismiss on or before March 20, 2017. On March 20, 2017, plaintiff filed a response stating that after the filing of her initial Complaint, she discovered a great deal more information that should be brought before the court. Plaintiff then proceeded to list various causes of action such as breach of fiduciary duty, negligence, Americans with Disabilities Act, Breach of Contract, Wrongful Termination, deprivation of rights pursuant to 42 U.S.C. § 1983 and the Missouri Merchandising Practices Act. On April 24, 2017, plaintiff delivered to the Court a forty-one page pleading entitled "Amended Civil Complaint" in which she provides additional details regarding the above referenced causes of action. Attached to the Amended Complaint are hundreds of pages of medical and mental health reports, statements and grievances. However, plaintiff did not file this pleading with the Court, nor does it appear from the Certificate of Service that she served this pleading on opposing counsel. On May 3, 2017, the Court directed plaintiff to file a Motion requesting leave to file the Amended Complaint. The Court instructed plaintiff to explain the reasons why she was seeking leave to amend her Complaint after the expiration of the deadline and also indicate whether she intended to continue asserting the claims in her initial Complaint for violations of for Title VII, ADEA and the Missouri Human Rights Act or whether she concedes that these claims are time barred.

## II. STANDARD

In <u>French v. Central Credit Services</u>, No. 4:16CV1654RLW, 2017 WL 3105848

(E.D.Mo. July 20, 2017), the Court stated:

> Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, the court should freely grant leave to amend a pleading when justice so requires. "[T]he court has broad discretion and will only deny leave to amend in order to avoid undue delay, where there has been bad faith on the part of the plaintiff, when amendment would be futile or when amendment would result in unfair prejudice to the defendants." Swider v. Hologic, Inc., Civ. No. 12-1547 (DSD/AJB), 2012 WL 6015558 at *2 (D.Minn. Dec. 3, 2012)(citation omitted). However, "[w]here a party seeks leave to amend a complaint after the deadline in the applicable case management order has passed, the [Federal Rule of Civil Procedure] 16(b) good-cause standard applies first, then the 'when justice so requires' standard of Rule 15(a) applies." Jo Ann Howard & Assoc., P.C. v. Cassity, No. 4:09-CV-01252-ER, 2014 WL 6607077, at *4 (E.D.Mo. Nov. 19, 2014). "Good cause requires a change in circumstance, law, or newly discovered facts." Id. (citing Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 948 (8th Cir. 2012)).

Id. at *1.

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. Id. (quoting Twombly). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

3

### III. DISCUSSION

**A. Motion to Amend**

**1. Good Cause for Leave to Amend**

In her Motion for Leave to File an Amended Complaint, plaintiff states that the "amended complaint maintains the counts and allegations against the same defendants from the original complaint, but accounts for the significant factual and procedural developments that have occurred since the original complaint was filed." (Motion to Amend, pp. 1-2). Plaintiff then states that she has been at a disadvantage in this case from the beginning due to severe injuries she suffered in a fire in December 2016. Plaintiff states that the side effects of being in a medically induced coma hampered her memory and as a result, her ability to meet the deadlines in the Scheduling and Trial Order. Additionally, plaintiff states that "[n]one of the factors that may militate against granting a motion to amend is present in this case. Plaintiff moved swiftly to file these papers once the Supreme Court's ruling issued and administrative proceedings resumed[1]. Thus, there is no undue delay in Plaintiff's request to amend. The newly-alleged facts were entirely unknown – and in fact, not in existence- at the time the Commission filed its original complaint. Plaintiff is not seeking the amendment in bad faith or with a dilatory motive." (Motion to Amend , pp.5-6). Again, the Court is not sure what "newly alleged facts" plaintiff is referring to, as the facts alleged in the Amended Complaint occurred between August 2007 and February 4, 2015 and relate to four different injuries plaintiff suffered while employed by Ford.  Plaintiff alleged that she was

---

[1] The Court is unsure what plaintiff is referring to here, as there has been no Supreme Court ruling which impacted plaintiff's Amended Complaint.  Nor is the Court aware of any administrative proceedings, other than the denial of plaintiff's charge by the EEOC.

4

put on involuntary leave status due to these injuries and despite the Union's involvement, Ford has failed to return her to work in a position that would accommodate her disabilities. Plaintiff's initial Complaint was filed on July 18, 2016. In her initial Complaint, plaintiff alleged that she was put on involuntary leave due to on the job injuries and despite union involvement Ford failed to return her to work in a position that she can perform within the medical restrictions and in a non-hostile, non-threatening work environment. Plaintiff also alleged that no one from the Union took steps to return her to work. She also stated that she was told that she was not allowed to return to the Ford plant after she was assaulted on November 19, 2014. (Doc. # 5, pp. 6-7).

The only significant difference that the Court can discern between the original complaint and the amended Complaint, are the causes of action. In the initial Complaint, plaintiff asserted causes of action under Title VII, Age Discrimination in Employment Act ("ADEA"), Americans with Disabilities Act ("ADA") and Missouri Human Rights Act ("MHRA"). In the Amended Complaint, plaintiff again alleges violation of ADA, but also adds the the following counts: 42 U.S.C. § 1983; Breach of Fiduciary Duty; Negligence; Breach of Contract and Wrongful Termination.

Defendants argue that the Motion for Leave to Amend should be denied because: 1) plaintiff failed to demonstrate good cause and 2) any amendment would be futile. Defendants state that the deadline in the Scheduling Order to file amended pleadings was February 24, 2017, however, plaintiff did not deliver her amended complaint to the Court until April 24, 2017, two months past the deadline. As noted above, "[g]ood cause requires a change in circumstance, law, or newly discovered facts." Jo Ann Howard & Assoc., P.C. v. Cassity, No. 4:09-CV-01252-ER, 2014 WL

6607077, at *4 (E.D.Mo. Nov. 19, 2014). The Court does not find that plaintiff has demonstrated that she meets any of these criteria.

The original complaint was filed on July 18, 2016. Plaintiff's Amended Complaint was received by the Clerk's Office on April 24, 2017. The factual premise of both the original and amended complaints is the same, plaintiff has not added any new factual information to her amended complaint, that she did not possess before. Nor has plaintiff alleged that there have been any changes in the laws relating to her claims. The only change in circumstance that plaintiff has alleged is that she was severely injured during a fire in December. But, this was six months after the original complaint was filed and all of the facts and information contained in the amended complaint were known to plaintiff before she was injured. Thus, the Court does not find that plaintiff has satisfied the good cause standard for filing an Amended Complaint. However, even if plaintiff had been able to satisfy this standard, the Court still finds that the Motion to Amend should be denied because any amendment would be futile.

**2. Futility**

Defendants state that the motion for leave to file an amended complaint should also be denied because the amendments would be futile, as they could not withstand a motion to dismiss. The Court will examine each of the counts alleged in plaintiff's Amended Complaint to determine if there are any viable claims.

**a. 42 U.S.C. § 1983**

In this count, plaintiff states that on July 20, 2013, she was pinned between two F150 trucks. Plaintiff states that Ford refused to allow her to seek medical treatment or to call paramedics. Plaintiff states that she has been denied medical treatment and was

threatened with termination if she did not release her work injury claims. Plaintiff claims that Ford neglected its duties to plaintiff with regard to her injuries and did not take the appropriate steps until after the incident to improve the work place conditions.

> A private party, however, can be held liable under 42 U.S.C. § 1983 if it acts under color of state law. . . .Acts of a private party are fairly attributable to the State so as to be deemed under color of state law for 42 U.S.C. § 1983 purposes if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. . . .The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State. . . .[even though] the regulation is extensive and detailed.

Newman v. Hernia Mesh Co., No. C17-0076-LTS, 2017 WL 2990860, *4 (N.D.Iowa July 13, 2017)(internal citations and quotations omitted). In the instant case, plaintiff has not alleged that Ford was a state actor or acted under color of state law when it allegedly violated her rights. Thus, the Court finds that plaintiff's § 1983 claim could not withstand a motion to dismiss and allowing amendment to add this claim would be futile.

   **b. Americans with Disabilities Act**

Plaintiff states that she was injured while working on the job for Ford and these injuries left her with permanent disabilities. Plaintiff states that despite the Union's involvement, Ford failed to accommodate her disabilities. Ford argues that plaintiff's claim appears to focus on the alleged failure to accommodate *during* her employment as opposed to the termination of her employment. Ford argues that regardless plaintiff's claims would be untimely. Plaintiff filed her Charge of Discrimination on March 25, 2016. Ford argues that plaintiff was terminated in February 2015 and thus any arguments regarding its failure to accommodate plaintiff's disabilities during her employment would be time barred.

7

> Before a plaintiff may file a complaint in federal court alleging violations of the ADA, the ADEA, or Title VII, she must first exhaust her administrative remedies." <u>Colquitt v. St. John's Mercy Health Service</u>, Case No. 4:11-CV-1460 (E.D.Mo. Jan.17, 2012)(citing <u>Parisi v. Boeing Co.</u>, 400 F.3d 583, 585 (8th Cir.2005)). Exhaustion is accomplished by filing a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. <u>See</u> 42 U.S.C. § 2000e-5(e)(1). Additionally, for claims based on the MHRA, a plaintiff must file a charge of discrimination with the Missouri Human Rights Commission within 180 days of the discriminatory act. <u>See</u> Mo.Rev.Stat. §213.075(1); <u>Holland v. Sam's Club</u>, 487 F.3d 641, 643 (8th Cir.2007)(Plaintiff "must file a charge of discrimination within 300 days of the occurrence under Title VII and within 180 days under the MHRA.").

<u>Luetkemeyer v. Columbia Public Schools</u>, No. 4:13-CV-1110 (CEJ), 2013 WL 5707859, *2 (E.D.Mo. Oct. 21, 2013).

Plaintiff alleges that Ford terminated her on February 4, 2015, but she also alleges that she did not find out that she had been terminated until July 31, 2015. "[T]he time for filing a claim with the EEOC starts running on the date when the employee receives a definite notice of the termination, not upon [her] discharge." <u>Riddle v. Citigroup</u>, 449 Fed.Appx. 66, 69 (2d Cir. 2011)(quoting <u>Flaherty v. Metromail Corp.</u>, 235 F.3d 133,137 (2d Cir. 2000)). In <u>Dring v. McDonnell Douglas Corp.</u>, 58 F.3d 1323, 1328 (8th Cir. 1995), the Court stated, "[i]n the context of an ADEA action, our court, following <u>Ricks</u>, has accordingly held that the limitations period begins to run when the plaintiff receives notice of a termination decision." In the instant case, even though plaintiff states that Ford terminated her on February 4, 2015, she alleges that she did not receive actual notice of her termination until July 31, 2015. Using July 31, 2015 as the accrual date, would mean that plaintiff's claim of ADA discrimination based on her termination would be timely as it was filed within 300 days of March 25, 2016. However, only plaintiff's claim relating to her termination would be timely because her other claims

8

of failure to accommodate occurred in 2007, 2009 and 2013.

Finding that the claim is timely however, is only one hurdle that plaintiff's claim must surpass. Plaintiff must also sufficiently plead that her termination was based on her disability. "In order to establish a prima facie case of disability discrimination under the ADA and MHRA, Plaintiff must show: she is disabled as defined in 42 U.S.C. §12102(2); (2) she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) she has suffered an adverse employment action because of her disability." Krone v. City of Pine Lawn, No. 4:16CV1801RLW, 2017 WL 1424320, *2 (E.D.Mo. Apr. 20, 2017)(internal citation and quotations omitted). In Johnson v. Robert McDonald Secretary Dept. of Veterans Affairs, No. 4:15-CV-1869 CAS, 2016 WL 3997072, *5 (E.D.Mo. July 26, 2016), the Court noted in that case that where the complaint "does not contain any factual allegations as to the nature of plaintiff's claimed disability, or that plaintiff was terminated *because of* her disability. It therefore fails to state a claim for disability discrimination. See Walz v. Ameriprise Fin., Inc., 779 F.3d 842, 845 (8th Cir. 2015)." Id. at *5 (emphasis added). In the instant case plaintiff asserts that she sustained injuries while working as an Assembly Line Worker for Ford. She states that these injuries left her with permanent disabilities and despite the involvement of the Union, Ford failed to accommodate her disabilities in accordance with the work restrictions placed on plaintiff. (Plaintiff's Proposed Amended Complaint, p. 16-17). Plaintiff then also quotes long passages discussing the ADA and what an employer's obligations are under the ADA. Plaintiff also includes several examples of various factual scenarios describing situations where employers are required to make accommodations. In the last paragraph of this Count, plaintiff states:

> In this case the only accommodations that FORD would have made is a change in the type of job assignments given to the Plaintiff. FORD refused to do, instead continued to assign the Plaintiff jobs that required the Plaintiff to perform certain task functions that continued to aggravate injuries that the plaintiff sustained on the job, as an Assembly Line Worker. Due to the Plaintiff working the assigned task contrary to medical restriction, and as a result of the fear of termination. The injuries that Plaintiff sustained are now permanent, for which the Plaintiff received temporary disability for and a ($25,000.00) Twenty-Five Thousand Dollar settlement.

(Plaintiff's Proposed Amended Complaint, p. 22). These allegations do not include any reference to plaintiff's termination or that Ford terminated her *because of* her disability. The allegations relate only to plaintiff's claim that Ford failed to accommodate her after her injuries. However, as discussed above, because these injuries occurred in 2007-2013, they are outside the limitation period. Accordingly, the Court finds that any amendment based on a violation of the ADA would be futile.

### c. Breach of Fiduciary Duty

Plaintiff alleges that Ford denied her medical attention in connection with an incident that occurred on July 20, 2013 and the Union failed to aid plaintiff in the enforcement of workmen's compensation policies concerning workplace injuries. Plaintiff alleges that the Union failed to enforce the medical restrictions that had been placed on plaintiff. Plaintiff states that the Union by "not acting in their fiduciary capacity, the Union acted in complicit fashion with FORD to deprive the Plaintiff of their right to receive emergency medical treatment, and continued in such denial through the harassment the Plaintiff endured when the Plaintiff voiced in opposition to FORD who denied the Plaintiff emergency medical treatment at the time of the injury incident. The Union Representative failed to act [in] the Plaintiff's best interest." (Proposed Amended Complaint, pp. 23-24).

10

Defendants argue that the proposed breach of fiduciary duty claim could not withstand a motion to dismiss because it is preempted under the Missouri Workers' Compensation law. Lambrich v. Kay, 507 S.W.3d 66, 77 (Mo.App. 2016). Additionally, defendants state that plaintiff has not alleged facts which show that there was any type of a fiduciary relationship between plaintiff and Ford or plaintiff and the Union. The Court agrees that plaintiff has not alleged any such facts. In Elkhart Metal Fabricating, Inc. v. Martin, No. 14-CV-00705, 2015 WL 1604852 (E.D.Mo. Apr. 9, 2015), the Court stated:

> There are no Missouri cases, however, that stand for the proposition that an employer corporation necessarily owes fiduciary duties to its employees as a matter of law. This does not mean that a fiduciary relationship can never arise in such a situation. It means such a duty does not arise automatically due to the nature of the relationship. Instead, a claimant who wishes to demonstrate the existence of a fiduciary duty owed by an employer to an employee must plead and prove [these] five elements . . ..

Id. at *4. The elements of a fiduciary relationship are:

> (1) one party must be subservient to the dominant mind and will of the other party as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value, which are the property of the subservient party, must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic and habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

Id. (quoting A.G. Edwards & Sons, Inc. v. Drew, 987 S.W.2d 386, 394 (Mo.App.1998)). In the instant case, plaintiff's proposed Amended Complaint does not allege the existence of any of these elements. Accordingly, the Court finds that it would be futile to allow plaintiff to amend her Compliant to assert a breach of fiduciary duty claim.

11

### d. Negligence

In her proposed amended Negligence claim, plaintiff stated that it is her position that "the employer's (FORD) negligence, having occurred during the course of the Plaintiff's employment, gives rise to a compensable claim under Workmen's Compensation." Plaintiff then proceeds to cite to cases from other jurisdictions. Plaintiff then concludes her claim by stating:

> In the final analysis, what we are confronted with here is an act of negligence by the employer, FORD, FORD's negligent failure to provide proper medical care to an employee stricken on the job with a work related injury sustained as a result of an unsafe work environment. As in the case of "normal and customary work functions as typical to the assembly line at FORD," we are of the view that an "act of negligence" (assuming arguendo, a duty to act) does constitute "a sudden and tangible happening, of a traumatic nature."

(Proposed Amended Complaint, p. 28). As noted above, the court finds that such negligence claims are preempted by the Missouri Workmen's Compensation statute. Indeed, plaintiff seems to acknowledge this in her proposed Amended complaint stating: "[i]t is the Plaintiff's position, however, that the employer's (FORD) negligence, having occurred during the course of plaintiff's employment, gives rise to a compensable claim under Workmen's Compensation. . . ." (Proposed Amended Complaint, p. 27). Thus, the Court finds that such an amendment would be futile, due to the preemption of the claim.

### e. Breach of Contract

In her Breach of Contract claim plaintiff alleges that the Union failed to protect her when the supervisory staff failed to provide medical attention to the Plaintiff. Plaintiff also alleges that the Union failed to act in her best interests when she was threatened with termination for seeking a reasonable accommodation due to her work related injuries and for seeking outside medical attention. Plaintiff also alleges that the Union

12

failed to act in a fiduciary manner when Ford threatened her with termination for filing a workmen's compensation claim and unemployment.

Defendants argue that such a claim would not withstand a motion to dismiss because plaintiff has not alleged exhaustion of the grievance/arbitration procedures set forth by the collective bargaining agreement.  Defendants state that because the contract which plaintiff is alleging was breached is the collective bargaining agreement between Ford and the UAW, § 301 of the Labor Management Relations Act applies and plaintiff "is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." DelCostello v. Inter. Broth. of Teamsters, 462 U.S. 151, 163, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983).

In the factual portion of plaintiff's proposed Amended Complaint plaintiff states that on August 17, 2015, she went in grievance.  In October 2015, plaintiff states that she went to the U.S. Government of Nationals union and is still in grievance eight months later. These alleged facts seem to indicate that plaintiff has started the grievance procedure with the Union, but it does not appear that at the time that plaintiff filed her proposed Amended Complaint, those proceedings had concluded.  Thus, the Court finds that plaintiff's proposed amended breach of contract claim could not withstand a motion to dismiss because plaintiff has failed to plead all the necessary elements of the breach of contract claim.

### f. Wrongful Termination

Plaintiff also asserts a claim for wrongful termination.  Plaintiff states that she was threatened with termination if she filed for unemployment.  Plaintiff also alleges that Ford denied her medical treatment and threatened her with termination if she did not

13

release all of her occupational injury claims. Plaintiff also alleges that she reported Ford's unsafe work place conditions to OSHA and she filed health and safety claims against Ford. In her proposed amended complaint, plaintiff alleged that she was working under the collective bargaining agreement that was negotiated by the UAW. (Proposed Amended Complaint, p. 36).

In May v. Pratt Industries (USA), Inc., No. 1:06CV129HEA, 2008 WL 1777409 (E.D.Mo. Apr. 16, 2008), the Court stated:

> In Missouri, employees without employment contracts, as articulated above, are considered at-will employees and can be terminated with or without cause. . . .Missouri courts, however, have recognized a public policy exception to the at will employment doctrine. . . .This public policy exception, like the doctrine itself, is confined to at-will employees. . . Accordingly, *contract employees*, those employed for a "definite term" and who cannot be discharged without just cause, *have no state law cause of action for wrongful discharge*. The public policy exception to employment-at-will is a narrow one. . . .Missouri courts have outlined four categories of public-policy exceptions: (1) discharge of an employee because of his or her refusal to perform an illegal act; (2) discharge because an employee reported violations of law or public policy to superiors or public authorities; (3) discharge because an employee participated in acts that public policy would encourage, such as jury duty, seeking public office, asserting a right to collective bargaining, or joining a union; and (4) discharge because an employee filed a worker's compensation claim.

Id. at *5 (emphasis added). In the instant case, plaintiff states in her proposed Amended Complaint that she worked under the UAW's collective bargaining agreement. The types of claims that she is alleging in her wrongful termination count are the types of claims which would be covered under the public policy exception, but as noted by the Court above, this exception applies only to at-will employees and contract employees "have no state law cause of action for wrongful discharge." Accordingly, the Court finds that plaintiff's Wrongful Termination count could not withstand a Motion to Dismiss and thus it would be futile to allow amendment of plaintiff's Complaint to assert this claim.

14

### g. Other Claims in Original Complaint

In her original complaint, plaintiff alleged claims for violations of Title VII, ADEA, Americans with Disabilities Act and the Missouri Human Rights Act. In her Motion for Leave to Amend, plaintiff stated that the Amended Complaint maintains the counts and allegations from the original compliant but accounts for the specific factual and procedural developments that have occurred since the original complaint was filed.

As the Court discussed above with regard to the ADA claim, the Title VII, Age Discrimination and Missouri Human Rights Act claims would also be untimely. Title VII and the ADEA also require that they be filed with 300 days of the discriminatory action. In the original complaint, plaintiff states that she was put on involuntary leave on January 21, 2014 due to injuries that she sustained and despite union involvement, the company failed to return her to work that she can perform. Plaintiff also alleges that she was assaulted by an HR Rep in November 2014 and that no action was taken toward the person that assaulted her. As noted earlier, plaintiff filed her Charge of Discrimination on March 25, 2016. So, any alleged discriminatory events occurring in 2014 would be untimely. Even if the Court were to assume that plaintiff was alleging that her termination (which she allegedly learned about on July 31, 2015) violated these statutes, she has not alleged that her termination was due to her race, color, sex or age or disability. In her original Complaint, plaintiff states only:

> I was put on involuntary leave on or about 1/21/2014, due to injuries sustained on the job that have left me with permanent disability bilaterally in my hand/arms/shoulders/hips. Despite union involvement and my constant cooperation and inquiries, the company has failed to return me to work in a position that I can perform within medical restrictions and in a non-hostile, nonthreatening work environment. I was also assaulted by a HR Rep 11/19/2014, removed from the premises, and no action was taken toward the person that assaulted me. I have been told by a UAW rep that I

15

> am not wanted back at the plant because I did not have a good rapport
> with the UAW or Ford.

(Initial Complain, Doc. #5, p. 6). Plaintiff makes a similar claim against the Union in her initial complaint alleging that despite being a member since 2007, the Union did not take the necessary steps to return her back to work. Id. at p. 7. These allegations at most allege a failure to accommodate claim and do not allege that plaintiff was terminated as a result of or due to a discriminatory purpose. Thus, the Court finds that the allegations in the original Complaint relating to failure to accommodate are untimely and that plaintiff fails to state a claim in her original Complaint based on her termination. Thus, the Court finds that these claims should be dismissed.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS** defendant Ford Motor Company ("Ford's") Motion to Dismiss (Doc. # 7) and **GRANTS** United Auto Workers Local 249 Union ("UAW's") Motion to Dismiss (Doc. # 20) and **DENIES** plaintiff's Motion for Leave to File An Amended Complaint (Doc. 28). The Court also **DENIES AS MOOT** UAW's Motion for Extension of Time to Respond to Plaintiff's Motion for Leave to File An Amended Complaint (Doc. # 33), **DENIES AS MOOT** Plaintiff's Motion for Discovery (Doc. # 35) and **DENIES AS MOOT** Defendants' Motion for Extension of Time to File Dispositive Motions (Doc. # 38).

Date: August 11, 2017  **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri  Fernando J. Gaitan, Jr.
United States District Judge

16